O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE WATERS,<br><br>    Plaintiff,<br><br>  v.<br><br>NOTORIOUS MEDIA, LLC, et al.,<br><br>    Defendants. | Case No.: 2:21-cv-08623-MEMF(ASx)<br><br>**ORDER GRANTING PLAINTIFF SHANE WATERS'S MOTION TO CLARIFY, AMEND, AND/OR CORRECT THE COURT'S ORDER AND AMENDED ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [ECF NO. 56]** |

///

///

Before the Court is the Motion pursuant to Federal Rules of Civil Procedure 59(e), 60(a), and/or 60(b) to Clarify, Amend, and/or Correct and/or Motion for Reconsideration filed by Plaintiff Shane Waters. ECF No. 56. For the reasons stated herein, the Court makes the following amendments to its August 17, 2022 Order:

1. Consistent with the Court's analysis regarding liability on Shane Waters's breach of contract claim, only Defendants Notorious Media LLC and Peter Vincer are found to be jointly and severally liable for $376,178.42 in compensatory damages and related pre- and post-judgment interest;
2. The Court finds that the Complaint adequately establishes that the Defendants are subject to personal jurisdiction in this forum; and
3. The Court enters a separate judgment.

I.     **Factual and Procedural Background**

The Court previously summarized the factual and procedural background in its August 17, 2022 Order and Judgment Granting Waters's Motion for Default Judgment. *See* ECF No. 54 ("Order"). As such, the Court only recites the facts and procedural history relevant to the instant motion.

Plaintiff Shane Waters ("Waters") is a podcast host located in Wabash, Indiana. *Id.* at 2. Defendants Notorious Media, LLC ("Notorious Media") and Notorious Holdings, LLC ("Notorious Holdings") are companies headquartered in Los Angeles, California. *Id.* Defendant Peter Vincer ("Vincer") is the primary principal and CEO of Notorious Media and Notorious Holdings (collectively, the "Notorious Defendants"). *Id.*

On August 17, 2022, the Court entered an Order Granting Default Judgment against all Defendants. *See id.* The Court found Notorious Media, and Vincer—through alter ego liability—, liable for breach of contract. *See id.* at 18. The Court also found the Notorious Defendants liable for trademark infringement under 15 U.S.C. § 1117(a). *Id.* The Order also entered judgment against the Notorious Defendants; granting a permanent injunction requiring the Notorious Defendants to "remove the logos for Waters's podcasts 'Foul Play' and 'Hometown History' from the

https://notorious.llc website within seven (7) days of [the Order]," and permanently enjoined the Notorious Defendants "and their officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any one or more of them . . . from otherwise suggesting any continued connection, affiliation, and/or association with Waters and/or Waters's podcasts." *Id.* The Court further found "[a]ll defendants jointly and severally liable to Waters in the amount of $419,242.22," a total comprised of "$376,178.42 in compensatory damages; $41,739.30 in pre-judgment interest; and $1,324.50 in costs." *Id.* Finally, the Court found Waters entitled to post-judgment interest from the Notorious Defendants, "jointly and severally", at the rate of 3.28 percent per annum. *Id.*

On August 31, 2022, Waters filed a Motion to Clarify, Amend, and/or Correct the Court's Order and/or Motion for Reconsideration pursuant to Federal Rules of Civil Procedure 59(e), 60(a), and/or 60(b). ECF No. 56 ("Motion" or "Mot."). Specifically, Waters seeks to correct the Order to amend an inconsistency between the Court's analysis and Conclusion finding Notorious Media and Vincer directly liable on Waters's breach of contract claim but finding "[a]ll defendants . . . jointly and severally liable" for $376,178.42 compensatory damages based on the breach of contract claim. Mot. at 8–9; *see* Order at 6–9, 18–19. Waters further requests that the Court, to the extent that it is required to do so, make "express findings" regarding the existence of the Court's jurisdiction over the Notorious Defendants and the adequacy of service of process, Mot. at 9, and, pursuant to Federal Rule of Civil Procedure 58(a), issue a separate "Amended Judgment" granting Waters's Motion for Default Judgment. *Id.* at 9. The Notorious Defendants have not opposed this Motion.

**II.      Applicable Law**

Federal Rule of Civil Procedure 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice." A Court may relieve a party from a final judgment or order under a variety of circumstances, including "mistake" and "inadvertence." FED. R. CIV. P. 60(b). A party may file a motion to amend or correct a final judgment. *See* FED. R. CIV. P. 59(e). However, such a motion must be filed no more than twenty-eight (28) days from the date of the entry of the judgment. *Id.*

Federal Rule of Civil Procedure 58(a) requires that the district court set out judgment in a separate document. FED. R. CIV. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document . . . .").

### III. Discussion

Waters requests that the Court amend the Order and separately enter judgment. As the Motion was filed on August 31, 2022—fourteen days after the Court entered its Order and Judgment—Waters satisfies the twenty-eight-day requirement mandated by Federal Rule of Civil Procedure 59(e). The Court now turns to the substance of the Motion.

#### A. The Court finds only Vincer and Notorious Media liable for breach of contract and subject to compensatory damages.

Waters highlights a discrepancy in the Order wherein the Court, in its analysis, found that the Complaint sufficiently alleges breach of contract as to Notorious Media, alter ego liability on Waters's breach of contract claim as to Vincer, but no alter ego liability as to Notorious Holdings, Order at 6–8, but the Court, in its Conclusion, found "[a]ll defendants . . . jointly and severally liable to Waters" for $376,178.42 in compensatory damages premised on the breach of contract claim. Mot. at 11–12; *see also* Order at 6–8, 18.

The Court corrects this discrepancy. Consistent with the findings in the analysis, *see* Order at 6–8, the Court hereby finds Notorious Media liable for breach of contract. As the Court has determined that Waters has sufficiently alleged that Vincer is an alter ego of Notorious Media, the Court similarly finds Vincer liable for breach of contract. *See id.* However, as the Court has not found that Waters sufficiently establishes alter ego liability of Defendant Notorious Holdings LLC ("Notorious Holdings"), *id.*, Notorious Holdings is not found to be liable for Waters's breach of contract claim.

Thus, only Notorious Media and Vincer are liable for breach of contract. Notorious Media and Vincer are jointly and severally liable for $376,178.42 in compensatory damages premised on Waters's breach of contract claim.[1] Notorious Media and Vincer are similarly held liable for pre–

---

[1] The Court's analysis as to the appropriate compensatory damage amount remains unchanged from the Order.

judgment interest based on the aforementioned compensatory damage amount at 10 percent per annum as mandated by California Civil Code section 3289(b) and running from the end of the ten-day cure period, July 8, 2021, to the hearing held on November 10, 2022. *See* Order at 13–14. Notorious Media and Vincer are also liable for costs stemming from this claim in the amount of $1,324.50.[2]

### B. The Court finds the Defendants subject to personal jurisdiction in California.

Waters next requests that the Court make an express finding as to the existence of personal and subject matter jurisdiction as well as propriety of service of process. Mot. at 12–16.

    i. The Notorious Defendants are subject to general jurisdiction in California.

When granting a motion for default judgment pursuant Federal Rule for Civil Procedure 55, the Ninth Circuit requires that the district court "determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The purpose of this requirement is to prevent the district court from "entering a default judgment that can later be successfully attacked as void. *Id.* As such, the district court must consider whether the defendant is subject to personal jurisdiction in this forum. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). And though the district court has an obligation to determine whether jurisdiction is proper, *see id.*, it is the *plaintiff's* obligation to establish that the Court has personal jurisdiction over a defendant. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003) (holding that the plaintiff "bears the burden of establishing the district court's personal jurisdiction over the Defendants"); FED. R. CIV. P. 8(a)(1) ("A pleading that states a claim for relief must contain [. . .] a short and plain statement of the grounds for the court's jurisdiction . . . .").

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d

---

[2] The Court's analysis as to the appropriate costs amount remains unchanged from the Order.

at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). Under the minimum contacts test, jurisdiction can be either general or specific. *Id.*

Upon examination of the Complaint and the instant Motion, it appears that Waters seeks to establish personal jurisdiction under the theory of general jurisdiction. *See* Mot. at 14–15; Compl. ¶¶ 2–3, 9–11. "A court may assert general personal jurisdiction over defendants when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks omitted) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The Complaint alleges that Notorious Media is a California limited liability company and, "at all relevant times has been headquartered in Los Angeles County . . . ." Compl. ¶ 9. A defendant corporation is subject to general jurisdiction in the forum state if it is adjudged to be domiciled in that forum. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). A corporation is deemed domiciled where it is incorporated or has its principal place of business. *See id.* ("Citizenship or domicile—or, by analogy, incorporation or principal place of business for corporations—also indicates general submission to a State's powers."). As the Complaint alleges that Notorious Holdings and Notorious Media are domiciled and holds their principal places of business in California, the Court finds that Waters has met his burden. The Court finds Notorious Holdings and Notorious Media subject to personal jurisdiction in California.

The Court next determines whether Waters has established that Vincer is also subject to personal jurisdiction in California. In his Motion, Waters argues that the Court's earlier finding "that Vincer is liable for breach of contract as the alter ego of Notorious Media (*i.e.*[,] an entity subject to this Court's general personal jurisdiction) necessarily implies a finding that the Court has general personal jurisdiction over Vincer." Mot. at 14.[3]

---

[3] Waters cites to *ADO Fin., AG v. McDonnell Douglas Corp.*, 931 F. Supp. 711, 715–17 (C.D. Cal. 1996) to support this contention. Mot. at 14. However, trial court decisions are not binding on this Court. *See Hart v. Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001) ("[T]he binding authority principle applies only to appellate decisions, and not to trial court decisions . . . .").

The Ninth Circuit has held that while "the parent-subsidiary relationship does not on its own establish two entities as 'alter egos,' and thus does not indicate that general jurisdiction over one gives rise to general jurisdiction over the other." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citation omitted). Instead, "the alter ego test may be used to extend personal jurisdiction to a foreign parent or subsidiary when . . . the foreign entity is not really separate from its domestic affiliate." *Id.* (internal quotation marks omitted) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015)). Thus, for a plaintiff to establish that a defendant is subject to personal jurisdiction in a forum due to alter ego liability, the "plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Williams*, 851 F.3d at 1022 (quoting *Raza*, 793 F.3d at 1073).

In the Order, the Court determined that Waters sufficiently satisfied the alter ego prima facie test and established that Vincer is an alter ego of Notorious Media. Order at 6–8. As general jurisdiction may be imputed based on alter ego liability, as the Court has found Notorious Media subject to general jurisdiction in California, it so follows that alter ego Vincer is similarly subject to general jurisdiction in this forum.

Accordingly, the Court finds all Notorious Defendants subject to personal jurisdiction in this forum.

### ii. The Court has subject matter jurisdiction over this action.

Courts sitting within the Ninth Circuit also have an obligation on a Motion for Default Judgment to confirm that the court has subject matter jurisdiction over the instant case. *Tuli*, 172 F.3d at 712. There are two ways in which a case may be heard in federal court: 1) diversity jurisdiction or 2) federal question jurisdiction.

Waters states that the Court has subject matter jurisdiction over the federal Lanham Act claims pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121. Compl. ¶ 17. He further contends that the Court has subject matter jurisdiction over the state law breach of contract claim pursuant to 28 U.S.C. § 1967. Waters further argues that subject matter jurisdiction is proper under

diversity citizenship as there is complete diversity between the parties and the amount in controversy exceeds $75,000. Compl. ¶ 19.

Federal question jurisdiction is governed by 28 U.S.C. § 1331 which dictates that federal courts are courts of limited jurisdiction and "shall [only] have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Diversity jurisdiction, on the other hand, has two elements: 1) the amount in controversy "exceeds the sum or value of $75,000"; and 2) each plaintiff is a citizen of a different state from each defendant. 28 U.S.C. § 1332(a).

Here, Waters brings two trademark claims under the federal Lanham Act, 42 U.S.C. §§ 32(1), 43(a). *See* Compl. ¶¶ 38–57. 28 U.S.C. § 1338 explicitly provides that district courts "shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . trademarks." As such, there is no question that the Court has subject matter jurisdiction over both Lanham Act claims.

Turning to the breach of contract claim, Waters argues that the Court has subject matter jurisdiction over this claim due to supplemental jurisdiction. A district court may exercise supplemental jurisdiction over state law claims only if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004); *see also Trs. of Constr. Indus. & Laborers Health and Welfare Tr. v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) ("Nonfederal claims are part of the same 'case' as federal claims when they 'derive from a common nucleus of operative fact' and are such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding.'" (quoting *Finley v. United States*, 490 U.S. 545, 549 (1989) *superseded by statute as stated by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005))). Moreover, 28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173

(1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966) (summarizing the inquiry)).

Here, the Complaint alleges that the Notorious Defendants' actions underlying the breach of contract claim are part and parcel of the Lanham Act claims. Indeed, the narrative thread running through the Complaint indicates that Lanham Act claims—unauthorized use of Waters's logos and podcast names—is a direct result of Notorious Media and Vincer's failure to adhere to the terms of the Agreement. As a result, the breach of contract claim and the federal Lanham Act claims flow naturally from one another, meaning that it would be both judicially inefficient and generally unreasonable to *not* find this claim subject to supplemental jurisdiction. Accordingly, the Court finds the breach of contract claim subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1967.

In sum, the Court finds that it has subject matter jurisdiction over the instant action.[4]

   iii. <u>The Court need not conduct an independent inquiry into adequacy of service of process.</u>

In requesting a motion for default judgment pursuant to Federal Rule of Civil Procedure 55, the plaintiff must first request that the clerk of court enter default. Rutter Group, FED. CIV. PRO. BEFORE TRIAL, CALIF. & 9TH CIR. EDS. § 6:35 (Apr. 2022 ed.) ("Rutter Guide"); *see also* FED. R. CIV. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *id.*(b)(1) ("If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk[—]on the plaintiff's request, with an affidavit showing the amount due[—]must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person."). Such a request requires the plaintiff to "present proof to the court clerk (by affidavit or declaration) that the defendant is 'in default'—i.e., that defendant has been served properly with summons and

---

[4] The Court also recognizes that it likely has subject matter jurisdiction pursuant to diversity jurisdiction, 28 U.S.C. § 1332. However, as the Court has determined that it has subject matter jurisdiction pursuant to grounds already stated, it need not separately inquire into the specific criteria underlying diversity jurisdiction.

complaint . . . and has failed to respond within the time permitted by the Federal Rules." Rutter Guide § 6:36. The clerk of court "*must* enter the default" if such proof has been provided. *Id.*

As such, inquiry into the adequacy of service of process is a preliminary determination conducted by the clerk of court upon the plaintiff's request for entry of default. While Waters contends that "district [c]ourt decisions from within this Circuit suggest that a Court, in adjudicating a default judgment motion, should examine the adequacy of service of process," Mot. at 15,[5] the procedure is clear: it is not within the Court's obligations to conduct an independent inquiry into the adequacy of service.

In any event, as Waters correctly states, the Order "impliedly found service of process to be adequate [in] citing to the docket entries for the filed proofs of service of process as to each [d]efendant." Mot. at 15; *see* Order at 3. Indeed, the Order expressly acknowledges that the clerk of court entered default, and thus independently determines that Waters has sufficiently met all requirements necessary for entry of default. *See* Order at 3.

### IV.     CONCLUSION

For the foregoing reasons, and for good cause shown, the Court GRANTS the Motion IN PART. The Court hereby incorporates the following changes to its Order:

1. Consistent with the Court's analysis regarding liability on Waters's breach of contract claim, only Notorious Media and Vincer are found to be jointly and severally liable for $376,178.42 in compensatory damages as well as pre– and post–judgment interest;
2. The Court finds that the Complaint adequately establishes that the Defendants are subject to personal jurisdiction in this forum; and
3. The Court has subject matter jurisdiction over this action.

The aforementioned corrections to the Court's Order and Judgment will reflect the Court's original intent in issuing the Order. *See Garamendi v. Henin*, 683 F.3d 1069, 1078 (9th Cir. 2012) (a trial

---

[5] Waters cites to a number of district court cases to support this contention. *See* Mot. at 15. However, as already stated, district court cases, even those from within the Ninth Circuit, are not binding on this Court. *See Hart*, 266 F.3d at 1174 ("[T]he binding authority principle applies only to appellate decisions, and not to trial court decisions . . . .").

court may alter a judgment pursuant to Rule 60(a) "to make a judgment reflect the actual intentions of the court"). An amended judgment vacating and superseding the prior judgment (that was a part of the prior Order and Judgment) shall issue.

**IT IS SO ORDERED.**

Dated: May 11, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge